May it please the Court, good morning. My name is Jordan Lurie. I represent plaintiffs and appellants in this action. Your Honors, I'd like to reserve two minutes for rebuttal, please. Your Honors, the Tourism Assessment Program at issue in this case is unconstitutional for two reasons. First, it places the burden on out-of-state car renters to pay for marketing that benefits businesses and residents in California. And second, the assessment program compels out-of-state renters to fund the speech of a private California entity, namely the CTTC, when the out-of-state renters are not citizens of California and have no voice in the California political process. Could the California legislature simply impose a tax of this type on the rental industry? Could it simply impose a tax as a tariff, Your Honor? Yeah. For purposes of... For all purposes, just to collect revenue. I believe it could. How is this different? This, Your Honor, is a permissive, a fee that the rental car companies decided to impose because they decided that they needed, they came to the, the CT, the rental car companies came to the CTTC with a program to fund tourism in California through assessing a fee. This is generated from the rental car companies. I think it's different than a fee that the, that the CTTC decides to impose in a lot of ways. Then, then you get yourself square into the Norr-Pennington doctrine, don't you? I mean, it may be bad public policy, I don't know, but aren't they immunized in terms of their pitching of that kind of an arrangement under Norr-Pennington? No, Your Honor, because, respectfully, no, Your Honor. This case is different than mere lobbying, and I think this is important to point out, and this goes to the state actor issue. Here, not only did the state essentially give the rental car companies the keys to the assessment, they actually let them build the car and then drive it. The level of symbiotic relationship here between the rental car companies and the state is much higher. This is not mere lobbying. What we've got here is evidence, and we've alleged it in our complaint. So what's the difference between mere lobbying and successful lobbying? Well, that's a good question, Your Honor, but I think that there is a difference, clearly, because there is a state actor doctrine and there is lobbying. And I think that this case is an example of how that distinction goes from mere lobbying to something even more. Where's the line? It's a difficult line, Your Honor. I think it's very case-specific, but in this case we've got the specific facts, and they are these. Right, but, I mean, how would you articulate the line so that we could write a decision saying you're on one side or the other? I think that when you have a situation where the state actor has the authority, for example, as the rental car companies did in this case, to actually put into place, to vote on whether the program should be implemented, you've crossed the line from lobbying to actually fulfilling a state function. So, for example, from here specifically, when the CTTC, when the statute was enacted, the legislation was passed, putting into place the Tourism Assessment Program, it was contingent on the rental car defendants voting to implement the program. This program would not have been implemented absent a vote. They voted 9-0 to implement the program. That is much more than lobbying. In fact, that's after the lobbying already takes place. They voted to implement the program. They can also vote to terminate the program. At some point, when you add those critical facts to the fact that the CTTC and the rental car defendants in this case, it's specifically the... I guess you're saying that they're acting in a legislative capacity and wouldn't legislative immunity protect them from that? Well, Your Honor... I mean, it hasn't been argued in this case, but it seems to be what you're arguing here. I'm not arguing that, Your Honor. I'm arguing that at some point we have to recognize, and I acknowledge the Court's frustration on this, that there has to be a difference between mere lobbying and something more than that. But if you merely lobby and then you get yourself an arrangement that is sanctioned by the state, and then you become the beneficiary of it, that's basically you're saying, well, now because you're a big beneficiary and because you lobbied so well, you've crossed the line. I mean, that would be what I hear you saying. No, Your Honor. What I'm saying is that there are certain things that you do that go beyond lobbying, and if it comes to the point where you can fulfill an essentially government function, namely to control whether a program should even be implemented from the get-go, you can vote to initiate that program so that the legislature can pass a statute enacting a program, but you, the rental card defendants, can determine whether that program actually goes into place with an up or down vote. You are now a state actor. You have done more than the normal participant in the process. You control the process. And then if you're a state actor, there's basically you're immune. I mean, you sort of are going around in this Mobius strip where either they're immune because of Norah Pennington or you put them in a state actor position. Why wouldn't they then be able to take advantage, whether it's legislative immunity or some other executive immunity? Maybe theoretically they would. As Judge Thomas pointed out, that was not an issue briefed in this case. But legislative aside, how about simply state actor immunity? I'm not sure what the answer would be in a general rule, to be honest, Your Honor. We did not brief it. We'd be happy to submit a supplemental brief on it. But I think for purposes of addressing Judge Thomas's case, there is a highly factually specific issue about whether you are a state actor. And in this case, our argument is that the rental car defendants are because of the specific facts that we've alleged, and mainly the votes implemented. Plus, you really have to take the entire discussion in context. That wasn't the only fact here. It's the most critical fact. Let's go back to Judge Hawkins' question about being able to impose taxes. Does the state have the authority to impose the hotel tax that we all pay when we show up and rent a hotel room? I believe it does, Your Honor. Okay. And assuming that more people who rent hotel rooms come from out-of-state than in-state, then under your theory, that also would be a violation of the Commerce Clause to have that state tax, would it not? If we can demonstrate, as we have here, that there was an intention for the out-of-state, that there's a discriminatory practice that focuses predominantly on out-of-staters, the answer would be yes, Your Honor. But where is the intent? I mean, it may be that more tourists come from out-of-state than in-state, but this was intended to be a tourist tax, correct? Correct, Your Honor. And that's the same as a hotel tax, right? Right. And a lot of people stay in hotels who are tourists in California. They're intrastate tourists, right? Correct. So the tax gets you one way, coming or going, no matter where you come from, right? That seems facially neutral to me. It is facially neutral, Your Honor. And that goes right to the heart of our Commerce Clause argument in this case. The statute is facially neutral, but it has a discriminatory purpose and effect. And we've alleged the facts to support that, at least sufficiently at the motion-to-dismiss stage. For example, under our theory of the case, which is equally plausible to the defendant's theory and to the approach that the district court took, why would the industry decide to target specifically hotels and rental car locations at hotels and airports? It's because that's where out-of-staters predominantly rent. Ninety percent of the rentals at airport locations are to out-of-staters. The burden is felt. That's like saying, why do they do it? Because that's where most tourists pick up their rental car, whether you're in-state or out-of-state. That may be, but that's a part of it, Your Honor. We've looked at, if you take these facts in the aggregate, why they targeted these two locations, the fact that 90 percent of the renters are there, the fact that they exempted local rentals, the fact that they pushed through this as a pass-through intentionally directed for consumers to pay, the fact that they would never have pushed through this scheme if they didn't think that people were going to pay, and they picked the specific location where the payors are the least powerful position to oppose it. If you put those factors together, Your Honor, you get a plausible explanation that the Commerce Clause here is violated. What's the difference between that and a hotel tax that Judge McEwen said you're targeting the same audience? Well, I think here it's much more obvious that you're targeting out-of-state consumers. So the analogy, I think, for Judge McEwen would be if the hotel tax was imposed only at hotels that are at airports or hotels on a border. Well, you know, we have the resort taxes that people pay, and there are designated resort areas in some states where you have that. And that's clearly, clearly aimed at out-of-staters. Now, there are in-staters who use the resorts, to be sure, but I think probably the numbers fall the same way they would in this case. What's wrong with that? I'm not sure that that's true, Your Honor. Here, and I think if the evidence in those cases would show that the vast majority, the predominant number of hotel users, or in our case renters, at airport and hotel locations are out-of-state, there would be a plausible claim that there is a Commerce Clause violation here. And I would also emphasize that right now we're – But if you – in terms of analytically, though, you said it's basically facially neutral. So does that right away put you into the Pike analysis? No. If it's facially neutral with a discriminatory purpose and effect, that puts us squarely in the strict scrutiny. But what's the purpose? You know, you haven't shown what the discriminatory purpose is. That's why I'm still having some trouble as to the purpose. What is the best evidence you have that there's a discriminatory purpose? I think the discriminatory purpose is to tax or would be to assess a fee specifically on out-of-state renters. No, you're saying that's not evidence. Let me say this, because it may not be a discriminatory effect. It may not be – the team may not have a discriminatory purpose. They're two different things. Correct. So you've described the effect. What's the purpose? I mean, usually in these kind of cases we're talking about economic protectionism, and that's not an issue here. So what is it? Well, in a sense, it is economic protectionism, Your Honor, and it does go to the heart of the Commerce Clause here. If California, for example, were to legitimately tax out-of-staters, you run squarely into the Commerce Clause problems of interstate barriers, of putting up the risk of balkanization. We do it. Nevada does it. Arizona does it. So we do have those risks here. But with respect to your question about purpose and effect, you can still run into a strict scrutiny parameter if you have effect without purpose. It's either or. So if in this case, and I think we've sufficiently alleged this, specifically for purposes of this appeal we've demonstrated it, that if all we had was discriminatory effect, we would still have a Commerce Clause violation. And I understand that the courts – I'm hearing the courts more concerned about purpose than effect. No, it's not about purpose. Your answer is we have effect and you seem to be saying we don't have a purpose. We don't have a case on purpose. Is that true? Well, I think that to the extent that we have a stronger case on effect, I'd go with that. Well, I mean, it seems a little bit different. Remember the case where the apple growers legislated, you know – The Hunt case. The Hunt case. You know, they're basically, you know, in North Carolina trying to keep out the Washington apples. Right. But of course, it's a neutral statute. Right. But the only reason to pass it there is that the only legitimate – there's no other legitimate reason other than to keep out these other apple – or the bad apples, as they might have imagined them. Here, isn't there another plausible legitimate purpose other than to just tax out-of-staters? It may be that there is another plausible legitimate purpose, but in a sense that services our argument. Because in the motion to dismiss, Your Honor, all we have to do is put forth a plausible explanation for why there's a Commerce Clause violation. I think we've done that. Ultimately, we'll get discovery and we'll prove what the intent really was, what the purpose really was. But we've done it. But the Hunt case, I think, supports our argument. Because in that case, there was a facial and neutral statute, but it exported the costs for that statute predominantly on out-of-staters. And we've got a similar concept here. I'd like to – Do you want to reserve your remaining time or do you want to take – I'd like to take 30 seconds to just – Your choice. I'll take just one minute for rebuttal to discuss the government speech defense because this may be of specific interest to Your Honor because you wrote the previous opinions on this issue. The Delano opinion came out after our briefs were submitted. And I think this is an opportunity, briefly, to distinguish Your Honor's previous holdings from this one. Very quickly, I think the Court's already asked some questions on whether the CTTC is a government entity. We would – it is not a government entity by the Court's – How can you argue that the rental companies are state actors and then say that the CTTC is not a government entity? You're right, Your Honor. There is a problem, I think, with the government's – with the defendant's position. That they can claim that they're looking for a speech. They have a problem with it. I don't think the plaintiffs do in this case. The hallmark of government speech doctrine here is political accountability, and the most important distinction between the Delano case that Judge McKeown offered recently and the previous cases, and in this case, we have no political accountability. These are out-of-state renters. The traditional safeguards and protections under Johans are not present. In this case, it's distinguishable. Also here, it's clear that there's no effective control over the message from beginning to end. Three important facts. The industry has veto power over the message and the marketing. The industry has veto power over the budget, and the industry can terminate the program. Whether or not these were actually authorized is not important. Actually used is not important because, Your Honor, it was written in Delano that it's whether the statute authorizes the control, and in this case the statute authorizes the control in the hands of the industry, not the government, and therefore the government speech doctrine does not apply. Thank you. May it please the Court, my name is Dan Sharp. I represent Enterprise and Vanguard and speak on behalf of the rental car defendants. I'm one of two appellees that you will hear from. The other, Diane Shaw, from the State of California. We've agreed that I'll take five minutes and she'll have the remaining ten, but I'm going first because I'm addressing a threshold preliminary issue, which is whether the rental car defendants are proper parties to this case at all. I'm here to address one issue only, and that is whether the rental car defendants are state actors who are properly called before the court to defend the constitutionality of the Tourism Marketing Act that was enacted by the California legislature in 2006. The state action doctrine is that it's judicially developed. The purpose of the doctrine is to ensure that state governments don't evade constitutional scrutiny by delegating governmental functions to private parties and evade scrutiny under the constitution. The second purpose of the doctrine is to preserve freedom and ensure that private parties are not burdened with constitutional burdens that private parties don't have. For example, we can discriminate against interstate commerce. We can say you cannot take our car out of California as part of our rental agreement. And so the state action doctrine has those two purposes. How do you go about determining whether or not the rental car defendants here are state actors? Well, there's no one size fits all test. It's based on the facts alleged, and you make a determination as to whether the conduct at issue that allegedly deprives the plaintiff of their constitutional rights is fairly attributable to the states. So you have to look at the specific conduct that's alleged to work the constitutional violation. And what is that conduct here? They say it's at the rates. The conduct here is that Mr. Kaminsky, Ms. Cohen fly into LAX from the East Coast. They go over to the rental car company. They rent a rental car, and for every $100 they're charged, they pay an extra 250 on their bill that is itemized on their bill for the Tourism Marketing Act. We take the 250 and give it to the CTC, and then they later buy ads, publish brochures, and market California. The speech is done entirely by the CTC. What the rental car companies do is they itemize on their bill this 2.5 percent charge. But the allegation is you participate in setting the rate. The rate is imposed. The fees are used to create government speech, which they don't agree with. That's a theory. Well, those are not the acts that work the constitutional violation. Those are acts that led to the enactment of the Tourism Marketing Act, and that's squarely nor Pennington immunity. We should not be in the position of defending the California legislature's statutes. We don't want to defend that. That's not our fight. Now, on the- You don't want to step down, but you don't want to defend it. Is that fair to say? We are neutral, Your Honor. We do not have a dog in that fight. This is a- Why do you say that when your industry lobbied and your industry participated? I mean, it may immunize you constitutionally for a variety of reasons. But why are you backing away from it? I don't understand. It's for the state to defend the constitutionality of the legislation. We- it's true that the legislature said we're only going to do this if you vote in favor of it. And there was a political event that occurred where a legislative judgment was made that the California legislature said we're not going to do this tourism program if the rental car companies and the other people are going to fight against it and object to it. So they wanted to make sure that everyone would consent to it. But that's part of the statute. That's in the tourism act. I understand your North Pennington doctrine argument completely. What I don't understand is when you say we don't have a dog in the fight. I mean- To defend the constitution. We are not state actors. You fed the dog. We're not state actors. If you look at the American Manufacturers versus Sullivan, it's very closely analogous to this. Pennsylvania enacted a statutory scheme for dealing with health insurance and workers' compensation. Part of that scheme allowed private health insurers to withhold benefits where there was a dispute over coverage. And the private insurers were sued for constitutional violations, failure to apply due process in their coverage decisions, and it went up to the U.S. Supreme Court. And the U.S. Supreme Court said looking at the specific conduct that's alleged here, which is the coverage decision and the decision to withhold benefits, that's done entirely by the insurance industry. Sure, the statute- You know what? We have your point in mind. This is the point at which Ms. Shaw is supposed to jump up, but she's too polite to do so, and say, help, you're cutting into my time. Well, the purpose of state action is to ensure that the actions of state governments don't evade constitutional scrutiny. And the proof that there's no state action here is the state is going to get up and defend the constitutionality of statute. Okay. Let's get on with that. Thank you. Good morning. May it please the Court, Diane Shaw representing appellees, California Travel and Tourism Commission, and Secretary Dale Bonner of the Business, Transportation, and Housing Agency. While appellees Bonner and CTTC believe that the briefs have adequately covered all of the arguments, appellees would like to address some of the contentions made by the appellants in their reply brief. With respect to prudential standing, we're contending that the district court was correct in its determination of a lack of standing based upon prudential limitations. The appellants are simply asserting their own rights. I'm sorry, they're simply asserting the rights of the rental car companies, not their own. The California Tourism Marketing Act is not directed at out-of-state consumers. It is directed at tourism dollars. So the state's position is that only the rental car companies could bring this action? That's correct. And the Commerce Clause? And the Commerce Clause cause of action? Under the Commerce Clause cause of action and under the First Amendment. A rental car company which is doing business across state lines, which most of these probably are, would have the standing to challenge the CTMA. A person who happens to be in another state such as this is merely, these particular appellants are merely complaining about what is essentially a cost of doing business. They're complaining about the fact that, well, they have to pay more. Isn't that at least enough to raise standing? They're basically saying, look, the reason we even have this statute is because they saw this great opportunity to collect on out-of-state people. I'm an out-of-state person. I have standing to complain about that charge because it falls disproportionately on out-of-staters. I don't know if that's true or not, but isn't that enough to at least get them into court to make their argument? No, because the purpose and even the effect of the statute from what we can see right now is that it is going after tourism dollars. But isn't that one of the merits not to standing? No, we believe that what the appellants have alleged is so, their interest is so tenuous here as to divide them as standing. They pay the dollars. They pay the dollars that go in. And at least as the facts allege, the rental car company just passed them through. There's no economic impact on the rental car company. So the plaintiffs are the ones that are suffering injury in fact. Who else? There's nobody else. Well, first of all, each rental car entity has to decide whether or not it's going to pass the statute. Yeah, but I'm talking about the facts as alleged here for standing. And let's just focus on the Commerce Clause because First Amendment's different. The plaintiffs have alleged injury in fact. They spent the dollars. The rental car companies don't have a dog in the fight, they say. They're just passing through it. So who else has standing to assert these Commerce Clause violations? Well, as the district court found, they had Article III standing. Yeah. But under the prudential limitations, they do not have standing. Their relationship with California and with the particular fee that's assessed to the rental car entities, which rental car entities may then decide to pass on or not, that relationship is so tenuous that they are essentially espousing the rights of the third party. He held up that pink piece of paper, which is one of those rental car forms, and when you go to the airport or the hotel and then you get the big taxes on your base fee, you get the 2.5% and the 9%. Who pays that tax? Well, it's been the consumer that has paid that tax with respect to the hotel. The consumer who has to bear the brunt of the tax have standing at least to open the courthouse door to complain about the tax. Because they're not – there's nothing to show that anything was intended to go after – that this assessment was intended to go after the consumer. This assessment is intended to go after the dollars. That goes to the merits of the case, not standing. I mean, how can the rental car companies assert the rights of out-of-state travelers who pay an extra fee? Because they're assessed the same fee regardless. The rental car companies that don't have an issue with that, they pay. How do they have standing to assert the interests of the rights of the out-of-state tourists? Well, the rental car companies, if they were to have any interest in challenging it under the Commerce Clause, would be asserting their own rights. Right, but what are those? Their right to not be burdened by any – to not have an undue burden on the free flow of commerce. What the consumer has is a right to go rent a car at perhaps a different place. At a place that's not a hotel or not a particular – or not an airport. The consumer in this case is just upset that the consumer has to pay the additional cost of doing business. Let's go to the merits then. You have a – everybody says, okay, it's a facially neutral statute, but the disparate impact is that it falls on the people from out-of-state who come to airports and hotels because they don't usually get in a taxi in order to go to the rental car that's, you know, 25 miles away from the airport. The one point they raise that I'd like your comment on is, you know, why haven't they raised enough of a factual issue to at least let this move on to further discovery and or to a trial as to whether there's this discriminatory purpose and effect? Well, I think that goes to the prudential standing. Okay, let's just assume they're standing. We'll just move over that now. Let's just assume for hypothetical purposes they're standing. Why wouldn't there be a factual issue remaining as to whether there's a discriminatory intent or effect here? There could possibly be a discriminatory effect, but that would be with any cost of doing business that's passed on. That would be with any tax that could be imposed by the State of California for the same transactions. This is an assessment that essentially the legislature of the State of California has imposed. Could the State say, when you show up to rent your car, only out-of-state people have to pay the tax? No. They couldn't say that? No, the State could not say that. Why couldn't they say that? Because that would have an untoward effect on the free flow of commerce. That would have a burden on the free flow of commerce. They're saying basically the same thing. They're saying, look, the State didn't say that, but the actual practical effect remains the same. So it's basically a matter of fact, although not a matter of statement. So they're saying, why don't you let us prove that at trial? Why shouldn't they be able to go to trial to prove that point? Maybe they're wrong, but they're saying there's a factual issue. Because if every person who alleged discriminatory effect were allowed to open the door, then I think what we would find is the courts going down a slippery slope with respect to standing to the point that We're assuming standing. We're assuming standing. We've jumped over that mountain. But we can't get to the merits without they don't have standing. Hypothetically, assume that they're standing in this case. Would you then concede that there's a genuine issue of material fact on the discriminatory effect that would preclude summary judgment? Or at least allow the plaintiffs to do further discovery? That's difficult for me to answer because we did not brief that. But obviously, I think the state's position would be no, that there wouldn't be any further factual development that needs to be. Why not? Let's assume the effect is 99 percent. Ninety-nine percent of the impact of this assessment goes on out-of-staters. Wouldn't that be different than if it's only 5 percent or 10 percent or 50 percent? Not when the object is to not go after those particular out-of-state consumers. When the object is to go. Let's say the discovery showed it's 100 percent. You had the best of intentions, but somehow you managed only to collect the assessment from out-of-staters. Well, okay, so then we're to assume that no one within the state of California is traveling. No, I'm just saying there's a matter of proof. I mean, they say they can prove 90 percent. Our only question is, is that enough of a factual issue to let the case progress if we hold that they're standing? No, because then it just seems to open the door. Well, we didn't brief that, Your Honor, because we did not get beyond the standing. Well, I understand you opened the door, but that's what we do, you know, if they can show a prima facie case. I'm just trying to give you a chance to argue that because that may be important to us. I apologize to the court. No, no, you don't need to apologize. I understand that. It's a primary defense, but I just wanted to make sure you had a chance. Standing is your main objection here. That is correct. Thank you. All right. Thank you. Mr. Murray, I think you used up all your time by maybe a minute of rebuttal. Thank you. Thank you, Your Honor, very briefly. With respect to the discriminatory intent, we have alleged facts that the purpose of enacting the statute as it was, to focus on airport and hotels, was specifically to get to the group, the out-of-staters, who are politically weakest, who have no opportunity to oppose this fee. The fact that 90 percent of them are also similar, you say, is true. I mean, there are cases in which there have been out-of-state hunting fees that have been proved by the Supreme Court and so forth. But in this case, as I think the Court, as Judge McKeown had acknowledged, we have at least at this point set forth sufficient facts that would show that there is an effect and a purpose. And we should know that. Well, I didn't say that. I asked her to assume it. As the Court suggested. I know you'd like to think that I agreed with you, but I haven't decided one way or the other. No, I'm sorry, Your Honor. What's different about this case than the out-of-state fee cases you have in other states? Let's assume it's a straight fee on out-of-staters. I mean, some cases have said it's okay. What's different about this one? I think if it were a straight fee, if this was a facially non-neutral statute, and this statute was targeted at out-of-staters specifically, I believe, Your Honor, that that would be a constitutional problem. If this statute says we are taxing or assessing a fee on only people who come from New York, I think that would be a problem. I think no one would disagree with that. We'd have strict scrutiny, though, and then we'd have to figure out if it was a violation. Correct. I mean, I think it would become virtually every statute that's facially discriminatory is going to have a very hard time satisfying the strict scrutiny standard. I believe it would not apply in this case, but thank you, Your Honor. Thank you. Thank you, counsel, for your argument this morning. The Gutminski v. Avis Budget Group is submitted.
judges: Hawkins, Thomas, McKeown